**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
LAGUERRE LENSENDRO,             :
                                :
        Plaintiff,              :
v.                              :  Civil No. 3:25-cv-154 (AWT)
                                :
EXPERIAN,                       :
                                :
        Defendant.              :
                                :
------------------------------ x
```

**RULING GRANTING MOTION FOR LEAVE TO PROCEED**
**IN FORMA PAUPERIS AND DISMISSING CASE**

Pro se plaintiff Laguerre Lensendro ("Lensendro") brings a five-count complaint against defendant Experian, claiming violations of the Fair Credit Reporting Act (the "FCRA"), codified as amended at 15 U.S.C. §§ 1681 et seq.. The plaintiff has also filed a motion to proceed in forma pauperis.

For the reasons stated below, the court is granting the motion to proceed in forma pauperis and dismissing the complaint pursuant to 28 U.S.C. § 1915(e)(2).

**I.    MOTION TO PROCEED IN FORMA PAUPERIS**

Section 1915 of Title 28 of the United States Code provides, in pertinent part:

> [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is

unable to pay such fees or give security therefor. 28 U.S.C. § 1915(a)(1). The court determines whether an applicant is indigent by reviewing the applicant's assets and expenses as stated on a declaration submitted with the motion to proceed in forma pauperis. Here, the plaintiff, through his supplemented financial affidavit, has demonstrated to the court an inability to pay for the commencement of this action. Accordingly, the court is granting the plaintiff's motion to proceed in forma pauperis.

The same statute that authorizes the court to grant in forma pauperis status to an indigent plaintiff also provides that the court "shall dismiss the case at any time if [it] determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Therefore, the court must review the complaint in this case to determine whether this action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

## II.  FACTUAL ALLEGATIONS IN THE COMPLAINT

The court must accept as true the factual allegations in the complaint for purposes of testing its sufficiency. See

Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997). It
contains the following allegations.

The complaint alleges that the plaintiff is a "consumer"
and that Experian is a "consumer reporting agency" within the
meaning of the FCRA. Compl. (ECF No. 1) ¶¶ 2, 3. See 15 U.S.C. §
1681a(c) ("'consumer' means an individual"); 15 U.S.C. §
1681a(f) ("'consumer reporting agency' means any person which,
for monetary fees, dues, or on a cooperative nonprofit basis,
regularly engages in whole or in part in the practice of
assembling or evaluating consumer credit information or other
information on consumers for the purpose of furnishing consumer
reports to third parties . . . .").

"On December 5, 2023," the plaintiff "sent a written
dispute to Experian identifying numerous items" in his report
which he believed to be inaccurate and "outlin[ing] each
discrepancy in detail." Compl. ¶ 15. Exhibit 1 attached to the
complaint is the communication from the plaintiff to Experian
disputing the information in his consumer report. See id. at 15-
26 (Pl. Ex. 1).[1] The plaintiff's communication detailed over 200
perceived inaccuracies, which can be categorized in the
following manner.

---

[1] The page numbers to which this ruling cites for documents
that have been electronically filed refer to the page numbers of
the filing, as a whole, and not to the page numbers, if any, in
the original documents included in the filing.

First, the plaintiff stated that several pieces of personal information in the report, which associated the plaintiff with two particular addresses, one particular employer, and several telephone numbers, were inaccurate, and he informed Experian that he should not be associated with them. See id. at 16-17 ("I have never lived at 133 Tresser Blvd Apt 12c Stamford CT,06901-3418"; "I do not live nor have I ever lived at 26 broad st apt 44 Norwalk CT, 06851-6185"; "I do not have the number 203 286 6387"; "I do not have the number 203 360 5664"; "I do not work at MCDONALDS"). The plaintiff also stated that his report should not include the credit histories for both "Lensendro Laguerre" and "Laguerre Lensendro", names with which Experian associated him. Id. at 16 ("It appears so, that I am operating under 2 names as It two difference name ID numbers; Why do I have two name ID numbers?").

Second, the plaintiff stated that the account numbers listed in his report were inaccurate because the report displayed those numbers only partially and used "x" symbols to represent the remainder of those numbers. See, e.g., id. at 18-22 ("The account number is incomplete, for it only shows the first 6 digits."; "What is the full account number?"; "The account number contains only the first 6 digits, what is the full account number?").

Third, the plaintiff stated that the report did not contain

certain types of information, which rendered it incomplete and misleading. Some of the omissions challenged by the plaintiff related to general account information. <u>See, e.g.</u>, <u>id.</u> at 17-18, 21 ("The most recent payment made is missing"; "Why are the terms of the contract left blank?"; "What is the exact date account was closed?"; "Why is the balance missing?"; "What is the last date the balance was updated?"). Other omissions challenged by the plaintiff related to monthly account information. For instance, the plaintiff stated that the report did not contain past due amounts or other information relating to the activity in the account for specific months during which the account was open. <u>See, e.g.</u>, <u>id.</u> at 18, 20-22 ("What is the charge off amount for the month of [O]ctober 2022?" "What is the past due amount for the month of April 2022?"; "What is the past due amount for the month of [M]ay 2022?"; "Why is there no data for the month of [N]ovember 2022?"; "Why is there no data for [M]arch 2023?"; "What is the monthly payment?"; "Why does the information indicate that I paid, but it does not show the amount I paid for the month of [J]uly 2021?").

Fourth, the plaintiff appeared to dispute the internal consistency of certain information in his report. Specifically, he questioned how his report could show that he paid nothing on a month-to-month basis, but his balance histories occasionally decreased on a month-to-basis over the same period. <u>See, e.g.</u>,

id. at 17 ("It shows I paid in [D]ecember 2021 but it does not
show the amount paid under balance histories"; "It shows I paid
something under payment history, but under balance histories it
shows I paid nothing for the month of [M]arch 2022."); id. at
18-19 ("Why does the information indicate that I paid, but it
does not show the amount I paid for the month of [F]ebruary
2019?"; "Why does the information indicate that I paid, but it
does not show the amount I paid for the month of [M]arch
2019?").

Fifth, the plaintiff stated that his report should not bear
multiple notations indicating that an account had been charged
off. See, e.g., id. at 18 (asking, in regard to a Bank of
America account, "[t]he account shows to be charged off in
November 2023 but under payment history it shows to be charged
off in October 2023. How is that so?"); id. at 22 ("Under
account info it says the account was charged off in December
2023 but under payment history it shows the account to be
charged off in September of 2021?"). He also asked, "How could
the status of [an] account be updated in [A]ugust 2023 if the
account went into collect[ion] in [O]ctober of 2023?" Id. at 24.

Sixth, the plaintiff asked why a particular creditor,
"Tmobile", was listed on his report when "they never loaned
[him] any money". Id. at 25.

The remaining enumerated items in the plaintiff's

-6-

communication are either indecipherable, see, e.g., id. at 17
("Under account info it does not show on which the account was
closed"), or simply ask a question without raising an express or
implied challenge to the accuracy of the information in the
report. See, e.g., id. at 18, 21, 25 ("What is the exact day
this account will be removed?"; "What is the exact day this
shall be removed from the consumer file?").

Exhibit 4 attached to the complaint is a confirmation of
the plaintiff's application to Sound Federal Credit Union for a
personal line of credit in the amount of $3,000,000. See id. at
50-51 (Pl. Ex. 4). Exhibit 3 attached to the complaint is a
notice addressed to "Lensendro Laguerre" from Sound Federal
Credit Union, informing the recipient about a denial of credit.
See id. at 48-49 (Pl. Ex. 3). The notice is dated November 22,
2024, and states that the credit union is "unable to extend
credit to [the recipient] at this time" for the "principal
reason" that it detected his credit history involved
"[g]arnish[ment], attachment, foreclosure, repossession,
collection action or judgment". Id. at 48. The notice also
states that "Experian" provided the credit union with the
recipient's "credit score" and that the following "[k]ey factors
adversely affected [the recipient's] credit score": "Lack of
real estate secured loan information"; "Too many delinquent or
derogatory accounts"; and "too few installment accounts recently

paid as agreed." Id. at 49.

On January 5, 2025, the plaintiff "obtained a new report from Experian, Report Number 3970-8620-04. Upon review, [the plaintiff] discovered that many of the items disputed in [his] December 5, 2023 letter remained unresolved." Compl. ¶ 16. Exhibit 2 attached to the complaint is the plaintiff's credit report as of January 5, 2025. See id. at 27-47 (Pl. Ex. 2). The plaintiff alleges that despite his communication detailing the disputed items in his report, "multiple persistent inaccuracies" remained "unresolved" in his report "as of January 2025." Id. ¶ 14.

## III. LEGAL STANDARD

In determining whether an action "fails to state a claim on which relief may be granted" under 28 U.S.C. § 1915(e)(2)(B)(ii), courts use the standard established for Federal Rule of Civil Procedure 12(b)(6). See, e.g., Sykes v. Bank of Am., 723 F.3d 399, 401, 403 (2d Cir. 2013) (using the Rule 12(b)(6) standard to review a sua sponte dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)). "Although courts must read pro se complaints with 'special solicitude' and interpret them to raise the 'strongest arguments that they suggest,'" pro se litigants must nonetheless "plead 'enough facts to state a claim to relief that is plausible on its face.'" Anthony v. Med. Staff at Inst., 409 F. Supp. 3d 102,

104 (E.D.N.Y. 2016) (quoting <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d 471, 474-76 (2d Cir. 2006); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). But a complaint will be dismissed when "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief.'" <u>Twombly</u>, 550 U.S. at 558. In determining whether a complaint should be dismissed for failure to state a claim, "a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted).

In determining whether a claim "is frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), courts consider whether the claim "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). The "function" of this provision, which is separate and distinct from that of 28 U.S.C. § 1915(e)(2)(B)(ii), is to "accord[] judges not only the authority to dismiss a claim based on an indisputably meritless

legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. at 327. "Holding a pro se plaintiff to less stringent standards than a plaintiff represented by counsel, and considering all of the allegations as truthful, the complaint must be frivolous on its face or wholly insubstantial to warrant sua sponte dismissal." Moorish Sci. Temple of Am., Inc. v. Smith, 693 F.2d 987, 989-90 (2d Cir. 1982) (citations omitted).

## IV.  MERITS OF THE COMPLAINT

For the reasons set forth below, all counts in the complaint fail to state a claim on which relief may be granted. The complaint is being dismissed pursuant to 28 U.S.C. § 1915(e)(2) with leave to amend.

### A. Counts 1, 2 & 3: Claims under 15 U.S.C. § 1681i(a) and 15 U.S.C. § 1681e(b)

In Count 1, the plaintiff claims that the defendant violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation of the disputed information in his report within 30 days of receiving his dispute.[2] See Compl. ¶ 50.

_____

[2] Section 1681i(a)(1)(A) provides, in relevant part:

if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation

The plaintiff claims that Experian's noncompliance with its obligations under 15 U.S.C. § 1681i(a)(1)(A) can be established solely based on his allegation that his report contained purported inaccuracies as of January 5, 2025. See id. ¶¶ 52-54. In Count 2, the plaintiff claims that the defendant violated 15 U.S.C. § 1681i(a)(5)(A)(1) by failing to delete or modify any information that is found to be inaccurate, incomplete, or unverifiable after conducting a reasonable reinvestigation. See id. ¶ 55.[3] The plaintiff alleges that Experian's noncompliance with its various obligations under that section of the FCRA is demonstrated by his January 5, 2025 credit report, which he

---

to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . ., before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

[3] Section 1681(a)(5) provides, in relevant part:

If, after any reinvestigation . . . of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall -- (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

15 U.S.C. § 1681i(a)(5)(A)(1).

alleges contains inaccuracies. See id. ¶¶ 57-58. In Count 3, the plaintiff claims that Experian violated 15 U.S.C. § 1681e(b) by failing to adopt and implement reasonable procedures to ensure the maximum possible accuracy of the information in his credit report.[4] See Compl. ¶¶ 61-63.

Thus, the claims in Counts 1, 2, and 3 are predicated on the purported inaccuracies remaining in the plaintiff's credit report as of January 2025. But the factual allegations in the complaint, taken as true and with reasonable inferences drawn in the plaintiff's favor, do not suggest that Experian failed to conduct a reinvestigation in violation of 15 U.S.C. § 1681i, failed to delete inaccurate information in the plaintiff's report in violation of 15 U.S.C. § 1681i, or failed to adopt and implement reasonable procedures to ensure maximum accuracy of the information in his report in violation of 15 U.S.C. § 1681e(b). This is because the complaint fails to plausibly allege that there were any inaccuracies within the meaning of the FCRA, and those claimed inaccuracies are the sole basis for the plaintiff's claims in Counts 1, 2, and 3.

"[A] credit report is inaccurate 'either when it is

---

[4] Section 1681e provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" Mader v. Experian Info. Sols., Inc., 56 F.4th 264, 269 (2d Cir. 2023) (quoting Shimon v. Equifax Info. Servs. LLC, 994 F.3d 88, 91 (2d Cir. 2021)). "If the information is accurate no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." Houston v. TRW Info. Servs., Inc., 707 F. Supp. 689, 691 (S.D.N.Y. 1989). A report becomes "sufficiently misleading" where "the reported information is 'open to an interpretation that is directly contradictory to the true information.'" Mohnkern v. Equifax Info. Servs., LLC, No. 19-CV-6446L, 2021 WL 5239902, at *4 (W.D.N.Y. Nov. 10, 2021) (quoting Wenning v. On-Site Manager, Inc., No. 14-cv-9693 (PAE), 2016 WL 3538379, at *9 (S.D.N.Y. June 22, 2016)).

A plaintiff is required to "identify the specific information on his credit report that is inaccurate and explain why the identified information is inaccurate." Lopez v. Equifax, Inc., No. 24-CV-3681 (LTS), 2024 WL 4108645, at *3 (S.D.N.Y. Aug. 26, 2024) (citation omitted). See, e.g., Viverette v. Experian, No. 21-CV-6989 (LTS), 2022 WL 357274, at *3 (S.D.N.Y. Feb. 7, 2022) ("Absent additional facts explaining why the disputed information and inquiries are false, Plaintiff has failed to plead an essential element of a claim under Section

1681e(b) . . . ." (citing <u>Phipps v. Experian</u>, No. 20-CV-3368
(LLS), 2020 WL 3268488, at *3 (S.D.N.Y. June 15, 2020)).

Where plaintiffs have alleged facts which show that the
omission of particular information could "'be expected to have
an adverse effect'", courts have concluded that consumer reports
were inaccurate due to a consumer reporting agency's failure to
include that omitted information. <u>Mader</u>, 56 F.4th at 269
(quoting <u>Shimon</u>, 994 F.3d at 91). <u>See, e.g.</u>, <u>Watson v. Caruso</u>,
424 F. Supp. 3d 231, 245-46 (D. Conn. 2019) (denying motion for
summary judgment where the plaintiff alleged his credit report
listed a "sexual assault" conviction that had been formally
"erased"); <u>Obabueki v. Int'l Bus. Machines Corp.</u>, 145 F. Supp.
2d 371, 374, 399 (S.D.N.Y. 2001) (denying defendant's motion for
summary judgment where the plaintiff showed the defendant failed
to include notation on his report that the "plaintiff's
conviction was 'vacated' and 'dismissed'"); <u>Kilpakis v. JPMorgan
Chase Fin. Co., LLC</u>, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017)
("[T]he selective information provided . . . was 'misleading in
such a way and to such an extent that it can be expected to
adversely affect credit decisions.'" (citation omitted)).

The FCRA does not require consumer reporting agencies,
following a reinvestigation, to reach the same conclusions as
the consumer, to incorporate into a consumer report information
the agency has determined to be inaccurate, or to remove from a

consumer report information the agency has confirmed to be
accurate. The FCRA contemplates that consumer reporting agencies
will, at times, disagree with consumers regarding disputed
information. See 15 U.S.C. §§ 1681i(a)(5)(B)(ii)-(iii)
(requiring an agency to notify the consumer when any disputed
information is "reinserted in the file by the consumer reporting
agency" following the reinvestigation's confirmation of its
accuracy"). See also 15 U.S.C. § 1681i(a)(3) ("[A] consumer
reporting agency may terminate a reinvestigation of information
disputed by a consumer . . . if the agency reasonably determines
that the dispute by the consumer is frivolous or irrelevant . .
. .").

Here, as stated above, the factual allegations in the
complaint, taken as true and with reasonable inferences drawn in
the plaintiff's favor, do not suggest that "that the challenged
report is inaccurate" or that Experian failed to comply with
either 15 U.S.C. § 1681i or 15 U.S.C § 1681e. Sessa v. Trans
Union, LLC, 74 F.4th 38, 42 (2d Cir. 2023).

First, the plaintiff alleges that his report is inaccurate
because it continues to associate him with two names, i.e.,
"Laguerre Lensendro" and "Lensendro Laguerre". Id. ¶ 17.
However, the plaintiff does not allege that the information or
credit history associated with either name is not attributable
to him. Moreover, the record submitted by the plaintiff himself

indicates that he has, on occasion, used each name, switching the ordering of what appear to be his surname and given name. For instance, he filed an appearance in this action and signed his complaint using the name "Laguerre Lensendro". Id. at 14. Yet, the name on the loan application attached to his complaint as an exhibit is "Lensendro Laguerre." Id. at 48 (Pl. Ex. 3). The court also takes judicial notice of the fact that another case was filed in the district on February 24, 2025 by a plaintiff who shares the plaintiff's residential address and who listed his name in the case caption and in many of the underlying filings as "Lensendro Laguerre". See Compl., Laguerre v. Am. Exp. Nat'l Bank, 3:25-cv-256 (ECF No. 1) at 1-2, 11 (listing his name multiple times in the complaint as "Lensendro Laguerre", but signing the complaint as "Laguerre Lensendro"). Thus, the plaintiff himself appears to utilize both versions of his name, including in credit applications. The complaint does not plausibly allege that the presence of either name in his report renders it inaccurate.

Second, the plaintiff alleges that his report is inaccurate because it lists his "employer" as "unemployed with income", though "'unemployed with income' and 'not provided' are not [his] employers." Compl. ¶ 18. Yet, no reasonable interpretation of his report would lead the reader to conclude that the name of the plaintiff's employer is either "unemployed with income" or

"not provided". Moreover, the plaintiff does not allege that he
is employed.[5]

Third, the plaintiff alleges that his report is inaccurate
because of the manner in which it lists his address. See id. ¶
19. The plaintiff writes:

> [The January 2025 report] lists 26 Broad Street, Norwalk,
> Connecticut, and denotes it as a business or retail trade
> location. My actual address is 26 Broad Street, Apartment
> 4, Norwalk, Connecticut. In my December 5, 2023, dispute
> (Exhibit 1, Line 2410), I stated: 'Under Notices, it lists
> 26 broad st as being part of a trade/retail business; that
> is not such and is very misleading. I take no part in any
> trade or business.' Despite this dispute, the error
> persists in the January 2025 report.

Id. ¶ 19. These allegations do not accurately characterize the
information provided in the January 5, 2025 credit report. The
plaintiff's report, as of that date, contains two addresses: (1)
"26 Broad St Norwalk CT, 06851-6185", which the report describes
as a "Multifamily" dwelling; and (2) "26 Broad St Apt4 Norwalk
CT, 06851-6185", which it describes as an "Apartment complex".
Id. at 28 (Pl. Ex. 2). As of January 2025, the report no longer
stated that the plaintiff's address is a "trade/retail
business." Id. ¶ 19. Rather, the report contained a separate
"Notices" section stating that the general address "has
pertained to a business", which the plaintiff does not allege to
be inaccurate. Id. at 30 (Pl. Ex. 2). The plaintiff has not

---

[5] The plaintiff acknowledges that his report "no longer"
states that he works at "McDonald's". Id. ¶ 18.

explained how the continued association of him with his general street address (and its omission of the particular unit where the plaintiff resides) is in any manner "open to an interpretation that is directly contradictory to the true information". Mohnkern, 2021 WL 5239902, at *4 (quoting Wenning, 2016 WL 3538379, at *9). See Compl. at 28 (Pl. Ex. 2).

Fourth, the plaintiff alleges that certain information -- including full account numbers, recent payments, monthly payment amounts, account terms, and the exact dates when his account will no longer be listed on his report -- are still omitted from his report, despite his prior disputation of such omissions, and that such omissions render the report inaccurate. See Compl. ¶¶ 20, 22, 26-27, 29. See, e.g., id. ¶ 33 ("the account number is incomplete and only displays partial numbers"); id. ¶ 46 ("[The report] under the Payment History section, shows 'ND' (no data), failing to provide accurate information for that month."); id. ¶ 34 ("the balance for the account is missing and is instead represented by a dash mark").[6]

---

[6] The plaintiff also alleges that his report must be inaccurate because the notations for certain accounts feature a "charge-off" notation "for each month," but omit the applicable "charge-off amounts". Id. ¶ 47. However, the plaintiff has not identified any requirement that each time a consumer reporting agency displays a charge-off designation on a credit report, it must format the report in such a way that a notation of the balance or amount owed on the account is immediately adjacent to or in the charge-off notation.

With respect to the omission of complete account numbers, such omissions are made for the purpose of protecting consumers such as the plaintiff. Cf. 15 U.S.C. § 1681c(g) ("[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."); Crupar-Weinmann v. Paris Baguette Am., Inc., 861 F.3d 76, 81 (2d Cir. 2017) ("[E]xperts in the field agree that proper truncation of the card number,. . . regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud." (citation omitted)).

With respect to other omitted information, the plaintiff alleges no facts which could show that the credit report did not provide accurate overviews of the available information regarding the activity in and status of each account associated with the plaintiff. For instance, the plaintiff alleges that his report is inaccurate because, in the section of his report that provides information about a Capital One Account, "the balance for the account is missing and is instead represented by a dash mark". Compl. ¶ 34. However, the report also shows that that account, for which no balance is shown, was "paid" and "closed" in 2021. Id. at 43-43 (Pl. Ex. 2). Thus, it appears that the use

of a dash mark accurately indicates there is no applicable balance on the account.

Similarly, the plaintiff alleges that his report is inaccurate because his report shows that there is no recent payment with respect to an American Express account, but simply displays a dash mark in that field. See id. ¶ 22. However, the other information in that section of the report indicates that recent payments were not made on the account. See id. at 30-32 (Pl. Ex. 2). With respect to this alleged inaccuracy and all others regarding omitted information, the plaintiff does not allege that the absence of the information contradicts the truth, (e.g., that he did, in fact, make recent payments). Rather, he simply asserts that the absence or unavailability of any information, in and of itself, constitutes an inaccuracy, even when the context indicates it is accurate. In addition, he fails to explain what, if any, "adverse effect" or misleading impression may be created by any particular omission. Mader, 56 F.4th at 269 (quoting Shimon, 994 F.3d at 91).

Fifth, the plaintiff alleges that several accounts are "marked as past due, charged off, and written off in January 2025", which, according to the plaintiff, represent "conflicting statuses." Compl. ¶ 21. See, e.g., id. ¶ 31 (alleging his report lists an "account as charged off, written off, and past due simultaneously, with an inconsistent past due amount of $818 as

of December 2024."). However, these statuses are not mutually
exclusive. The closure of an account or line of credit, or its
identification as being "charged off," does not itself resolve a
consumer's debt with respect to that account or eliminate any
applicable balance. See generally In re Anderson, 884 F.3d 382,
385 (2d Cir. 2018) (explaining that a debt is "charged off" when
"the bank changed the outstanding debt from a receivable to a
loss in its own accounting books" notwithstanding the fact "that
the debt remain[s] unpaid"); Ostreicher v. Chase Bank USA, N.A.,
No. 19-CV-8175 (CS), 2020 WL 6809059, at *4 (S.D.N.Y. Nov. 19,
2020) ("[A] creditor charging off or writing off a debt is
simply an internal accounting action by which the creditor stops
carrying the debt as a receivable because the chances of
collecting it are so low."). Additionally, consumer reporting
agencies may lawfully report accurate information regarding
closed accounts, discontinued lines of credit, or debts marked
as charged off. See, e.g., Ciment v. TransUnion, LLC, No. 24-cv-
212(CS), 2025 WL 307871, at *6 (S.D.N.Y. Jan. 27, 2025) ("FCRA
allows charged-off accounts to be reported for seven years . . .
." (quoting Shelton v. AmeriCredit Fin. Servs., Inc., No. 23-
10543, 2023 WL 2761702, at *3 (E.D. Mich. Apr. 3, 2023))); Boyer
v. TransUnion, LLC, No. 3:21-CV-00918 (KAD), 2023 WL 1434005, at
*6 (D. Conn. Feb. 1, 2023) ("Plaintiff does not attempt to
distinguish the instant case from the numerous others in which

courts have determined that reporting historical account data on closed accounts is neither inaccurate nor misleading."); Artemov v. TransUnion, LLC, No. 20-CV-1892 (BMC), 2020 WL 5211068, at *4-5 (E.D.N.Y. Sept. 1, 2020) ("[I]t should be obvious that, even though the banks labeled plaintiff's accounts as charged off, they had no obligation to zero out the overall or past due balance. . . . At any moment, BOA could decide to collect the charged off debt and seek the delinquent amount."); Ostreicher, 2020 WL 6809059, at *5 ("Chase here reported exactly what it should have: that Plaintiff had failed to pay on four accounts (which a potential future creditor would want to know) but had no monthly obligation on those accounts because Chase had written the accounts off (which Plaintiff would want the potential creditor to know).").

Sixth, the plaintiff alleges that his report is inaccurate because it includes multiple "charge-off" notations on certain accounts, which, according to the plaintiff, creates the misleading appearance that the status is "recurring". Id. ¶ 47. However, "[b]ecause an account can be charged off only once, it is implausible that anyone could read Plaintiff's credit reports and believe that the Accounts were charged off twice." Ciment, 2025 WL 307871, at *6. Cf. Lantos v. Equifax Info. Servs., L.L.C., No. 2:23-CV-00240 (LEW), 2024 WL 778819, at *3 (D. Me. Feb. 26, 2024) ("[I]t is unclear how any [reasonable] reader of

[someone's] credit report could be misled into believing that multiple charge offs occurred when it is undisputed that a charge off occurs only once." (citation omitted; alterations in original)).

Seventh, the plaintiff alleges that his report is inaccurate because the report's description of the payment history on an American Express account does not align with its description of the account's balance history. See, e.g., Compl. ¶¶ 24-25, 32. As mentioned above, the report provides certain information regarding an American Express account. See id. at 30-34 (Pl. Ex. 2). The report provides, in the Payment History section of its description of that account, the timeline with respect to the consumer's satisfaction of his obligations on the account. See id. at 31 (Pl. Ex. 2). The report also provides, in the Balance Histories section, a description of how the balance steadily increased on the account, in accordance with the consumer's failure to make payments on it. See id. at 32-33. The plaintiff does not show that the information in these two sections is inconsistent or inaccurate.

To the extent the plaintiff is attempting to dispute the fact that the Balance Histories section indicates that the consumer made payments of "$0" toward the account every month between January 2023 and December 2024, while the balance did decrease briefly from April to June 2023, the plaintiff

nonetheless fails to plausibly allege that he did, in fact, make payments toward the balance. Any such facts are especially important where the report submitted by the plaintiff shows that the consumer reporting agency "updated" this "item" based on its "processing of [the consumer's] dispute in [December] 2023." Id. at 34. The report also contains a notation indicating that the "consumer disagrees" with respect to the information provided on that account. Id. As stated above, where the consumer reporting agency has conducted a reinvestigation and included a notation regarding the plaintiff's disputation of items in the report, it is not required that an agency reach the same conclusions as the consumer about the information in the report. Here, it appears the agency conducted a reinvestigation and confirmed the information, and the complaint does not include factual allegations that contradict the statement in the report that no payments were made.

Because the complaint does not plausibly allege that the plaintiff's report is inaccurate, Counts 1, 2, and 3 fail to state claims under the FCRA and are being dismissed pursuant to 28 U.S.C. § 1915(e)(2).

### B. Count 4: Claim under 15 U.S.C. § 1681n

In Count 4, the plaintiff claims that Experian violated 15 U.S.C. § 1681n by willfully violating the standards set forth in the FCRA. See Compl. ¶¶ 58-61. Section 1681n provides that

"[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ." 15 U.S.C. § 1681n(a). Thus, a plaintiff cannot state a claim under Section 1681n unless that plaintiff has shown that the defendant has violated some other provision of the FCRA. The complaint fails to do so. Therefore, the complaint also fails to state a claim with respect to Count 4, and it is being dismissed pursuant to 28 U.S.C. § 1915(e)(2).

### C. **Count 5: Claim under 15 U.S.C. § 1681o**

In Count 5, the plaintiff claims that Experian violated 15 U.S.C. § 1681o by negligently violating the standards set forth in the FCRA. See Compl. ¶¶ 62-63. Section 1681o provides that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ." 15 U.S.C. § 1681o(a). Thus, a plaintiff cannot state a claim under Section 1681o unless that plaintiff has shown that the defendant has violated some other provision of the FCRA. The complaint fails to do so. Therefore, the complaint also fails to state a claim with respect to Count 5, and it is being dismissed pursuant to 28 U.S.C. § 1915(e)(2).

## V.    CONCLUSION

For the reasons set forth above, the Motion for Leave to Proceed in Forma Pauperis (ECF No. 2) is hereby GRANTED, and the

claims in the plaintiff's Complaint (ECF No. 1) are hereby
DISMISSED pursuant to 28 U.S.C. § 1915(e)(2), with leave to
amend. Any amended complaint must be filed within 30 days of the
date of this order.

It is so ordered.

Dated this 31st day of October 2025, at Hartford,
Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
